UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

United States of America,
        Plaintiff,

v.                                        Case No. 2:15-CR-5
                                              HON. TIMOTHY P. GREELEY
                                              HON. ROBERT H. BELL

Michael Floyd Zellar,
        Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Defendant is charged with one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), 2256(8)(A). Presently before the Court is Defendant's Motion to Suppress. ECF No. 25. The government responded (ECF No. 39), and a hearing on the matter was held before this Court on October 13, 2015. Testifying at the hearing were Jason McCall (computer technician), and two St. Ignace Police Officers (Officer Tarnutzer and Chief Wilk). ECF No. 46. After the hearing, both parties filed supplemental briefs. ECF No. 47; ECF No. 51. The matter is now ready for a decision.

      The evidence of record establishes the following. On April 13, 2010, Defendant called Jason McCall (of McCall Computer Repairs) to fix his computer. ECF No. 46 at 5. McCall, who works out of his home, attempted to fix Defendant's spyware problem by doing an operating system reinstallation on Defendant's computer. ECF No. 46 at 5. McCall testified about the process for conducting such a reinstallation:

> Basically if they want to save their data, I take their hard drive out and put it in a separate machine, take that – the data off their hard drive, put it on a separate hard drive in one of my machines. Then I put their hard drive back in their computer, run the Windows disk which wipes the hard drive clean, reinstall the Windows, take the

> hard drive out again, put it back in my machine, and transfer the stuff back onto their computer so the stuff, their files, songs, everything doesn't get lost in the process.

ECF No. 46 at 6. While McCall was transferring the files during this process, he testified that he observed file names passing across the screen that said "8 or 9 Y-O and then different sexual acts behind them." ECF No. 46 at 6 (noting that Y-O meant year-old to McCall). McCall testified that after seeing these file names, he opened the peer-to-peer file folder where these file names were being transferred from, and he saw "multiple" thumbnail pictures of girls that were "too young" engaged in sexual acts. ECF No. 46 at 9-10, 26-27. After finding these thumbnails, McCall called the St. Ignace Police Department to inform them that he found child pornography on a computer that he had been working on. ECF No. 46 at 10-11.

St. Ignace Officer Tarnutzer arrived at McCall's home later that day.[1] McCall then told Officer Tarnutzer that there was child pornography on the computer, and to "take the computer away [and] for him to deal with it so I [McCall] didn't have to." ECF No. 46 at 11, 23. Officer Tarnutzer testified that he took the computer from McCall's home (without obtaining a warrant or viewing any images himself) and logged the property into the evidence room at the station. ECF No. 46 at 31-32.

Notably, Officer Tarnutzer testified that he was the only officer on duty that day and that neither he, nor any of the officers in his department, had ever drafted a child pornography warrant before. ECF No. 46 at 29, 31-32. Consequently, Officer Tarnutzer testified that he took the computer without a warrant because he thought that if he did not, Defendant would "take the computer and [the officer would] never have that as evidence." ECF No. 46 at 32.

---

[1] While testifying, Officer Tarnutzer said he arrived to McCall's home on April 13, but the government stated that the date was April 12. ECF No. 46 at 5, 63. The Court will follow the date included in the majority of the documents and Officer Tarnutzer's testimony, that being April 13, 2010.

-2-

A day or so later, McCall stated that Defendant called him asking where Defendant's computer was, and McCall told him that it was in the possession of the St. Ignace Police Department because McCall had found child pornography on it. ECF No. 46 at 12-13. Chief Wilk, also of the St. Ignace Police Department, similarly testified that a day or so after police gained possession of the computer, Defendant called asking why they had his computer. ECF No. 46 at 41-42. Chief Wilk and Defendant had a brief conversation about why the officers had his computer and whether Defendant would like to talk more about this situation. ECF No. 46 at 42. Defendant informed Chief Wilk that he would be downstate for a few days, but would call the station when he returned. ECF No. 46 at 42. No attempt at obtaining a search warrant was made until April 20, 2010, when Defendant called the station a second time.

On the morning of April 20, 2010, Defendant called the police station, at which time Chief Wilk asked if Defendant had child pornography on his computer. ECF No. 46 at 43. Chief Wilk testified that Defendant responded by stating that he used a file-sharing site called LimeWire and that he had downloaded child pornography from that site. ECF No. 46 at 43. Defendant then told Chief Wilk that he would like to speak in-person. ECF No. 46 at 43. Defendant arrived at the station and spoke with Chief Wilk again. ECF No. 46 at 44. During this conversation, Defendant told Chief Wilk that he had clicked on a file called "preteen hard core" out of curiosity, and that after clicking on this file, he received a virus on his computer. ECF No. 46 at 44. This virus is what led Defendant to contact McCall to repair his computer. ECF No. 46 at 44.

Later that day, Chief Wilk called the Computer Crimes Unit (CCU) of the Michigan State Police for help in drafting a search warrant affidavit. ECF No. 46 at 45. Chief Wilk then drafted

an affidavit and presented it to state court Judge Gibson, who issued the search warrant. ECF No. 46 at 45-46. Chief Wilk subsequently made an appointment to send Defendant's computer to the CCU for further review. ECF No. 46 at 57. The government stated that the results of the search revealed over 600 images and videos containing child pornography on the computer.

Defendant claims that his Fourth Amendment rights were violated by Officer Tarnutzer's seizure of his property without a warrant, and by execution of a search warrant that lacked probable cause when sending Defendant's property to the CCU for a search.

With regard to the first issue—whether Office Tarnutzer's original acquisition of Defendant's computer from McCall's residence on April 13, 2010, was a seizure—the undersigned is of the opinion that when an "individual reveals private information to another, he assumes the risk that his confidant will reveal that information to authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information." *United States v. Jacobsen*, 466 U.S. 109, 117 (1984); *United States v. White*, 401 U.S. 745, 749 (1971) (the Fourth Amendment does not protect a "wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.") (citation omitted). These cases suggest that when an individual gives his property to a private individual, a Fourth Amendment seizure does not occur when that private individual gives that property to law enforcement. *See, e.g., United States v. Benoit*, 713 F.3d 1, 10-11 (10th Cir. 2013) ("Fourth Amendment concerns are not implicated 'when a private person voluntarily turns over property belonging to another"); *see, e.g., United States v. Sherwin*, 539 F.3d 1, 7 (9th Cir. 1976) (obtaining two books from a private party after a private search was not a seizure under the Fourth Amendment since the books were voluntarily turned over to the government by the private, third party). However,

even if Officer Tarnutzer's conduct amounted to a Fourth Amendment seizure, that would not affect my recommendation in this case.

Resolution of the motion rests on issues related to the search of the computer. The first issue is whether there was probable cause within the four corners of Chief Wilk's search warrant affidavit to believe that evidence of child pornography would be found on Defendant's computer. A judicial officer determines probable cause based upon the totality of the circumstances. *United States v. Hill*, 142 F.3d 305 (6th Cir. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Probable cause requires only a probability or substantial chance of criminal activity." *Id.*; *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (defining probable cause as having "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."). Probable cause requires a common sense, flexible approach to determine whether an "a man of reasonable caution believe[d] that certain items may be contraband or evidence of a crime." *Carroll v. United States*, 267 U.S. 132, 162 (1925). Overall, "[a] 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

A search warrant contains probable cause if an *affidavit* that supports the warrant contains sufficient facts for a reasonable person to believe that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. In addition to the affidavit, a magistrate judge may, under federal law, "take into account *oral information* provided by the affiant as long as it is provided under oath." *United States v. Walton*, 68 Fed. App'x 591, 593 (6th Cir. 2003) (citing *United States v. Harris*, 225 F.3d 288, 290-93 (6th Cir.), *cert. denied*, 534 U.S. 966 (2001) (emphasis added)). These two sources of

information, together, must "particularly describ[e] the place to be searched, and the persons or things to be seized" before a warrant may issue. U.S. Const. amend. IV; *United States v. Perry*, No. 06-20172-BC, 2007 WL 1017570, at *5 ("To justify the issuance of a warrant by an impartial magistrate, 'an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search.'").

The test for determining whether a search warrant describes the person or premises to be searched with sufficient particularity is not whether the description in the affidavit is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the person or premises with reasonable effort, and whether there is any reasonable probability that another person or premises might be mistakenly searched. *United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002) (noting an error in description is not automatically fatal to the validity of a search warrant); *see United States v. Sinclair*, No. 14-2624, 2015 WL 7567577, at *4 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quotations omitted) ("An affidavit in support of probable cause must demonstrate that there is 'a nexus between the place to be searched and the evidence sought.'"). Accordingly, "[c]ourts routinely have upheld warrants . . . where one part of the description of the [person or] premises to be searched is inaccurate, but the description has other parts which identify the [person or] place with particularity." *United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998); *see United States v. Shelton*, 418 Fed. App'x 514, 518 (7th Cir. 2011) ("[A]n affidavit is not defective simply because it could have been better.").

In child pornography cases, an affidavit must contain certain details before a magistrate judge may issue a search warrant. Most notably, "[i]ssuing judges frequently must rely on

written descriptions of images when determining whether evidence of child pornography is likely present." *Shelton*, 418 Fed. App'x at 518; *see also United States v. Brunette*, 256 F.3d 14, 18 (1st Cir. 2001). The description of the images must support a finding of "lascivious or prurient" content. *Shelton*, 418 Fed. App'x at 518 (stating that it was prurient when the affidavit described a bedroom setting, a girl undressing to a state of nudity, and the relative age of the subject). While the certifying judge need not view the images, the affidavit must sufficiently describe, in detail, the alleged pornographic images, "rather than relying on the affiant's conclusory statement that it is." *States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 5781570, at *11 (E.D. Tenn. Oct. 24, 2013).

Here, the search warrant was based on an affidavit alone, without any oral information to supplement it. In reading the affidavit, it identifies the suspected crime (a violation of 18 U.S.C. § 2252A(a)(5)(B) child pornography statute), and infers that evidence of a crime may be found on a computer (identified by serial number and model):

> On April 13, 2010, Officer Tarnutzer of this department received a call to go to [redacted] and speak with Jason McCall. Jason has a registered business in Mackinac County as a Computer Technician. Jason was asked by Michael Zellar, owner of the computer, to replace the hard drive on the computer. While Jason was working on the computer, **he found a naked person**, whom he believed to be a minor. Jason called Officer Tarnutzer to come and pick up the computer. Officer Tarnutzer took possession of the computer and placed it in to evidence. Michael Zellar spoke with me [Chief Wilk, affiant] on 4-20-10 and informed me that there are some images of naked children on the computer. He told me that he was **on a site** twice in the past month. Based upon Affiant's knowledge, training, and experience, Affiant knows that searching and seizing information from computers often requires officers to seize most or all electronic storage devices (along with related peripherals) to be searched alter by a qualified computer technician in a laboratory or other controlled environment.

ECF No. 26 at Ex. 2 (Affidavit for Search Warrant). Notably, this excerpt does not describe any potentially lascivious or prurient images of children. While the affidavit does indicate that Zellar told Chief Wilk that he had "naked" children on his computer, it does not describe the images of those children with any particularity (i.e., the potential age of the children, the acts they were engaged in, the location of the children, the clothes they wore, etc). *United States v. Davis*, 751 F.3d 769, 776 (6th Cir. 2014) ("Nudity alone, without more, cannot be 'child pornography' under federal law."). Without these types of details, the affidavit upon which the search warrant relied lacks probable cause to believe that child pornography would be found on Defendant's computer. *Perry*, 2007 WL 1017570, at *5 (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)) ("[A]n affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search."); *see, e.g., Shelton*, 418 Fed. App'x at 518 (noting that a description of a 12 year old girl undressing to full nudity in a bedroom amounted to probable cause for child pornography to be located on a computer). As a result, the affidavit fails to show that there was probable cause to believe that officers at the St. Ignace Police Department would likely find evidence of child pornography on Defendant's computer. Therefore, the search warrant is invalid.

Because the search warrant is invalid, the Court must next determine whether the *Leon* good faith exception to the exclusionary rule applies in this case. *See United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008). Generally, "[w]hen evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Carpenter*, 360 F.3d at 595 (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). However, courts should not suppress

evidence that was obtained in "objectively reasonable reliance on a subsequently invalidated search warrant." *Carpenter*, 360 F.3d at 595 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). This is because the "purpose of the exclusionary rule is to deter Fourth Amendment violations." *Sinclair*, 2015 WL 7567577, at *5.

The good faith exception is limited, however, and it does not apply in situations where "the officer will have no reasonable grounds for believing that the warrant was properly issued." *Carpenter*, 360 F.3d at 595 (quoting *Leon*, 468 U.S. at 923) (quotation omitted). There are four situations in which the *Leon* good faith exception does not apply:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false . . . ; (2) where the issuing magistrate wholly abandoned his judicial role . . . ; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*Sinclair*, 2015 WL 7567577, at **5-6 (quoting *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006)). Under these four scenarios, the *Leon* Court concluded that "officers can never assert reasonable reliance" on a later invalidated search warrant, and courts cannot apply the good faith exception. *Hodson*, 543 F.3d at 292. This case fails to overcome the third scenario, meaning the *Leon* good faith exception does not apply.

The third scenario indicates that the good faith exception does not apply when an affidavit "was nothing more than a 'bare bones' affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so

lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Sinclair*, 2015 WL 7567577, at *5; *see also Hython*, 443 F.3d at 484. This "so lacking indicia" test "is less demanding than the 'substantial basis' test" used in determining if probable cause exists to issue a warrant in the first place. *Sinclair*, 2015 WL 7567577, at *6 (quoting *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004)); *see also see United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002). In addition, a "bare bones" affidavit is one that merely states "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Sinclair*, 2015 WL 7567577, at *6 (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (quotations omitted)).

Moreover, under this third scenario, an officer must not have had any reasonable grounds for believing that the warrant was properly issued. *Hodson*, 543 F.3d at 293. "[T]he objective reasonableness determination does not examine the subjective states of mind of [the particular] law enforcement officers [conducting this particular search], rather it inquires 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.'" *Id.* (quoting *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) and *Leon*, 468 U.S. at 923 n.23).

Here, even when considering the state of the law in 2010, a reasonably, well-trained officer would have known that the search warrant affidavit lacked probable cause to show that child pornography would likely be found on Defendant's computer. *See Hodson*, 543 F.3d at 293. For example, the affidavit provided no description of *why* Defendant's computer should be searched, except for the line at the top of the affidavit indicating this is a suspected child

pornography case. *See Mills v. City of Barbourville*, 389 F.3d 568, 575-56 (6th Cir. 2004) (noting the good faith exception did not apply when there was no reason provided in the affidavit for why the address should be searched); *see also Hodson*, 543 F.3d at 293 (noting it is unreasonable for officers to infer a nexus without evidence to support the inference). In addition, there was no indication that the officers themselves did any investigation into the crime (such as view the pictures that McCall looked at to corroborate his allegations) to determine if Defendant likely had child pornography on his computer. *See, e.g., Helton*, 314 F.3d at 824-25 (noting the court did not apply the good faith exception where officers failed to corroborate statements from an "unknown, untested source"). At best, the affidavit states that there were naked pictures of children on Defendant's computer. *See Davis*, 751 F.3d at 776 ("Nudity alone, without more, cannot be 'child pornography' under federal law."). This is insufficient to support a finding of probable cause that there would likely be child *pornography* on Defendant's computer. *See Helton*, 314 F.3d at 825. Thus, it is clear that the affidavit merely contains conclusions and unsubstantiated inferences that there would be child pornography on Defendant's computer. It follows then, that a reasonable officer would not rely on this "bare bones" affidavit when executing a search warrant.[2] *See Groh v. Ramirez*, 540 U.S. 551, 564 (2004) ("[E]ven a cursory reading of the warrant . . . would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal."). Consequently, the *Leon* good faith exception does not apply to this case.

---

[2] Officer Tarnutzer testified that neither he, nor any of the officers he worked with at the St. Ignace Police Department, had ever conducted a child pornography investigation. ECF No. 46 at 29, 31-32. However, the good faith exception is an *objective*, not subjective, standard. *See, e.g., Hodson*, 543 F.3d at 293. Therefore, the officers' subjective belief that the search warrant affidavit was sufficient to conduct a search of Defendant's computer is irrelevant.

Therefore, based on the above-mentioned analysis, the undersigned recommends that Defendant's Motion to Suppress (ECF No. 25) be **GRANTED.**

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); W.D. MICH. LCIVR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Date:___12/7/2015__                    ___/s/ *Timothy P. Greeley*_____
                                       HONORABLE TIMOTHY P. GREELEY
                                       UNITED STATES MAGISTRATE JUDGE